IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

NORTHERN DIVISION

| | |
|---|---|
| KELLY JANIS, on behalf of her minor daughter K.J.,<br><br>                  Plaintiff,<br><br>    v.<br><br>DAVIS SCHOOL DISTRICT, DR. W. BRYAN BOWLES, Superintendent of the Davis School District, and T.J. BARKER, principal of Center Davis Junior High School,<br><br>               Defendants. | **ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br><br>Case No. 1:17-cv-00013<br><br>Judge Robert J. Shelby |

On January 27, 2017, Plaintiff Kelly Janis on behalf of her minor daughter K.J., filed a Complaint against Defendants Davis School District, Dr. W. Bryan Bowles, and T.J. Barker. In her Complaint, Ms. Janis claims Defendants' plan to exclude her daughter from the all-male Central Davis Junior High School wrestling team based on her gender violates the Equal Protection Clause.[1] Three days later, on January 30, Ms. Janis filed a Motion for a Temporary Restraining Order, asking the court to order Defendants to allow K.J. to try out for the wrestling team and attend practice.[2] Tryouts for the wrestling team are scheduled for February 3, 2017. The court set a status conference for February 1, 2017.

---

[1] Dkt. 1.

[2] Dkt. 6.

On February 1, before the status conference, Defendants' attorneys entered their appearances and filed a Response to Plaintiff's Motion for Temporary Restraining Order.[3] Because the court received the Response immediately in advance of the status conference, it did not review it before the hearing. At the February 1 hearing, counsel for both parties appeared. The court heard argument on the TRO, including the arguments advanced in Defendants' Response. The court has now reviewed Defendants' briefing and materials, and is prepared to rule on Plaintiff's Motion.

To establish she is entitled to a temporary restraining order,[4] Ms. Janis must demonstrate: (1) there is a substantial likelihood she will ultimately prevail on the merits of her claim; (2) she will suffer irreparable harm unless the injunction issues; (3) the threatened injury to K.J. outweighs any harm the injunction may cause to Defendants; and (4) the injunction would not be contrary to the public interest.[5] The Tenth Circuit requires the movant to make a heightened showing if the requested injunction is disfavored. Here, the requested injunction appears to be disfavored because it is mandatory—meaning it directs action, rather than prohibiting it—and it alters the status quo, understood to be the last uncontested status between the parties.[6] Based upon the arguments of the parties presented thus far, the court concludes Ms. Janis has met her burden to demonstrate the four factors weigh heavily and compellingly in her favor.[7]

---

[3] Dkt. 13; Dkt. 14; Dkt. 15.

[4] *See Emmis Comm'ns Corp. v. Media Strategies*, Inc., No. 00-wy-2507CB, 2001 WL 111229, at *2 (D. Colo. 2001) ("Where the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction." (citing 11A Charles Alan Wright, et al., Federal Practice & Procedure § 2951 (2d ed. 1995))).

[5] *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1254–55 (10th Cir. 2006).

[6] *See Guidance Endontics, LLC v. Dentsply Intern., Inc.*, 633 F. Supp. 2d 1257, 1268–70 (D. N.M. 2008).

[7] *See O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft,* 389 F.3d 973, 975 (10th Cir. 2004) (en banc) (stating that for disfavored injunctions the movant must "satisfy an even heavier burden of showing that the four [preliminary injunction] factors . . . weigh heavily and compellingly in movant's favor before such an injunction may be issued" (internal quotations omitted)).

The court notes at the outset that while the issues presented here are difficult, three other federal district courts have considered remarkably similar claims—claims by female wrestlers in junior high and high school that their schools' policies prohibiting them from competing on all-male wrestling teams violated their constitutional rights.[8] All three courts concluded the plaintiffs were entitled to preliminary injunctions allowing them to wrestle on the male teams.[9] These courts consistently determined the plaintiff had met her burden under the preliminary injunction standard.  While Defendants' arguments here vary from those asserted by the defendants in those cases, especially as to success on the merits, the court finds those earlier rulings instructive.  Against this background, the court considers Ms. Janis's showing on the preliminary record before the court.

## I. Likelihood of Success on the Merits

The court concludes Ms. Janis is likely to succeed on the merits of her Equal Protection claim under the Fourteenth Amendment.  In order to sustain a gender-based classification, the party seeking to uphold it must show an "exceedingly persuasive justification for the classification."[10]  Here, Defendants do not argue they have an exceedingly persuasive justification for the gender classification, but instead argue "[d]ifferent treatment based on gender is not in and of itself a violation of the Equal Protection Clause."[11]  They argue that for a gender-based classification to violate the Equal Protection Clause it must constitute

---

[8] *See Beattie v. Line Mountain School Dist.*, 992 F. Supp. 2d 384 (M.D. Penn. 2014); *Adams v. Baker*, 919 F. Supp. 1496 (D. Kan. 1996); *Saint v. Nebraska School Activities Ass'n*, 684 F. Supp. 626 (D. Neb. 1988).

[9] *See Beattie*, 992 F. Supp. 2d at 397 (granting preliminary injunction to allow twelve year old girl to wrestle on her public school's male wrestling team); *Adams*, 919 F. Supp. 1501 (granting preliminary injunction to allow fifteen year old girl to wrestle on her high school's male wrestling team); *Saint*, 684 F. Supp. at 630 (granting a preliminary injunction allowing a sophomore girl to wrestle on her high school's male wrestling team).

[10] *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982).

[11] Dkt. 15 at 8.

3

"disadvantageous treatment"—meaning if the government provides female athletes a superior or equal opportunity to male athletes there can be no violation of the Equal Protection Clause.[12]  In essence, Defendants argue the government may treat the sexes differently, as long as the treatment is equal.  They cite to a single federal district court case in support of this proposition.[13]

Defendants argue that K.J. will not be disadvantaged because she could have chosen to "wrestle up" and participate on the Layton High School co-ed wrestling team.[14]  Defendants assert that the Layton High School team "offers her many advantages in the form of better coaching, better training, better conditioning, superior facilities, more opportunities to compete, and a better opportunity to develop generally as a wrestler."[15]

K.J. argues that being denied the opportunity to compete on the Central Davis Junior High wrestling team would disadvantage her as compared to her male peers in several ways.  First, if she were to wrestle on the Layton High School team she would have to leave her final class period early or be forced to be late for practice or meets.[16]  Second, if she were forced to wrestle on the high school team she would have to wrestle more experienced and potentially stronger wrestlers, which she claims would put her at a disadvantage.  Finally, if she were forced

---

[12] *Id.*

[13] *Id.* (citing *Communities for Equity v. Michigan High School Athletic Ass'n*, 178 F. Supp. 2d 805, 808 (W.D. Mich. 2001) (overruled on other grounds, *Michigan High School Athletics Ass'n, Inc. v. Communities for Equity*, 544 U.S. 1012 (2005))).  Though it is not at all clear that this is so, the court assumes for purposes of this motion that the standard articulated by the Western District of Michigan would apply in this case, despite factual differences between that case—which dealt with class action claims based on the scheduled season of boys' versus girls' sports—and our case—which deals with an individual athlete requesting admission to a male team.  The court looks forward to additional briefing on this standard and its application.

[14] Dkt. 15 at 9.  Defendants also noted that she cannot now meaningfully participate on the Layton High School team as the season is ending, but that she could have previously elected to participate.

[15] Dkt. 15 at 9.

[16] This fact does not appear in the papers before the court but was asserted by Plaintiff at the hearing.  It was not refuted by Defendants and, therefore, the court accepts it for purposes of deciding this expedited Motion.

to wrestle at Layton High School she would be denied the opportunity to be on a team with her peers and schoolmates—thus losing important social aspects of the team experience.

The court concludes, preliminarily, that K.J. would be subject to disadvantageous treatment if she were not allowed to participate on her junior high wrestling team. While she could have participated at the high school level, and possibly benefitted from better facilities and coaching, she would also lose certain advantages that are available to her male peers who can choose to wrestle on the junior high team—including being able to attend both school and practice, being part of her school's team with her schoolmates, and having another year to compete at the junior high level before being forced to compete with potentially stronger and more experienced high school athletes.

The court further notes that the school's policy may also be discriminatory, placing K.J. in a substantially different position than her male counterparts. K.J. is forced to wrestle at the high school level instead of the junior high level. But her male peers can make this choice freely in consultation with their parents after considering their school schedules, athletic abilities and goals, and personal preferences.

Even assuming the applicability of the legal standard urged by Defendants, it appears very likely that K.J. can show she would be subjected to disadvantageous treatment if she is not allowed to participate on the Central Davis Junior High wrestling team. As a result, Defendants' decision to exclude her most likely is subject to intermediate scrutiny. Defendants have not advanced any justification to support their classification under intermediate scrutiny, and thus their classification very likely violate the Equal Protection Clause. At least at this initial stage, Ms. Janis has made a compelling showing that she is likely to succeed on the merits of her claim.

## *II. Irreparable Harm*

Defendants argue that K.J. will not suffer irreparable harm because she had the opportunity to wrestle on the Layton High School team and she currently can wrestle through the private Empire Wrestling program.  Ms. Janis argues that K.J. will be irreparably harmed if the requested restraining order does not issue because she will be denied her constitutional rights and she would not be allowed to participate on the junior high team during its formation—an important time for team dynamics and development.  She also argues she would miss important practice time.  The court concludes K.J. will suffer immediate and irreparable harm, through the likely denial of her constitutional rights,[17] if she is prohibited from participating on the Central Davis Junior High wrestling team on the same basis and with the same benefits and treatment as boys.

## *III. Threatened Injury Outweighs Potential Harm*

The court concludes greater injury will be inflicted upon Plaintiff by denial of injunctive relief than would be inflicted upon Defendants by granting such relief.  As discussed, it appears likely to the court that K.J. has a constitutional right to participate on her junior high wrestling team.  Denying her this right represents a significant injury.  In their papers and at oral argument, Defendants identified several potential harms from an injunction that would force them to rapidly change their policy of excluding female wrestlers.  Those harms are mainly logistical and attitudinal.  The court is sympathetic to the concerns Defendants raise—including the practical considerations of accommodating K.J.'s participation with little notice, and the need to discuss

---

[17] *See Beattie v. Line Mountain School Dist.*, 992 F. Supp. 2d 384, 396 (M.D. Penn. 2014) ("Deprivation of a constitutional right alone constitutes irreparable harm as a matter of law, no further showing of irreparable harm is necessary.").

such a policy shift with other athletes and their parents.  But on balance those harms do not outweigh the constitutional injury shown here.

*IV. Public Interest*

Because the court has concluded that K.J. is likely to succeed on the merits of her claim, allowing her to participate is not contrary to the public interest.  Defendants argue that the court should not dictate how the school's athletic programs are run and "[t]he public interest is better served by permitting the District and Central Davis to manage their own athletic programs."[18] The court agrees that Defendants and not this court are in the best position to manage the athletic programs at Central Davis Junior High School.  Indeed, if a preliminary injunction issues Defendants very likely will decide how to implement the required changes and comply with the constitution.  The court concludes, however, it is not against the public interest for a court to issue a TRO where Ms. Janis has made a strong showing her constitutional rights would otherwise be violated.

THEREFORE, it is hereby ORDERED that:

Defendants are temporarily restrained from taking any steps to prevent Plaintiff's daughter K.J. from participating on the Central Davis Junior High wrestling team or from competing in interscholastic wrestling competition in the Davis School District on the same basis and with the same benefits and treatment as boys participate and compete, or otherwise interfering with her ability to do so based on her sex, until Plaintiff's request for a preliminary injunction is adjudicated.

As noted by the court at the February 1st hearing, Defendants may file a supplemental Response to Plaintiff's Motion for a Temporary Restraining Order by close of business on

---

[18] Dkt. 15 at 10.

February 6, 2017.  Plaintiff may reply to this response no later than midnight on February 8,

2017.  The court will hold a hearing on February 10, 2017 at 1:30 p.m. to decide whether the

temporary restraining order should be converted to a preliminary injunction.

      No bond shall be required for the issuance of this temporary restraining order.  This order

shall expire fourteen (14) days after issuance unless extended by the Court.

      SO ORDERED this 2nd day of February, 2017 at 3 o'clock p.m.

      BY THE COURT:

      _____

      ROBERT  J. SHELBY
      United States District Judge